Dale M. Cendali (admitted *pro hac vice*)
dale.cendali@kirkland.com
Joshua L. Simmons (admitted *pro hac vice*)
joshua.simmons@kirkland.com
KIRKLAND & ELLIS LLP
601 Lexington Avenue
New York, NY 10022
Telephone: (212) 446-4800
Facsimile: (212) 446-4900

Yungmoon Chang (SBN 311673)
yungmoon.chang@kirkland.com
KIRKLAND & ELLIS LLP
2049 Century Park East
Los Angeles, CA 90067
Telephone: (310) 552-4200
Facsimile: (310) 552-5900

*Attorneys for Defendant Epic Games, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| KYLE HANAGAMI, an individual,<br><br>Plaintiff,<br><br>v.<br><br>EPIC GAMES, INC., a North Carolina Corporation, et al.,<br><br>Defendants. | CASE NO. 2:22-cv-02063-SVW-MRWx<br><br>**DEFENDANT EPIC GAMES, INC.'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE, MOTION TO STRIKE CERTAIN FORMS OF RELIEF**<br><br>Complaint Filed Date:  March 29, 2022<br><br>Judge:            Stephen V. Wilson<br>Hearing Date:  June 27, 2022<br>Time:            1:30pm<br>Courtroom:    10A |

# TABLE OF CONTENTS

**Page**

I.     INTRODUCTION ...................................................................................... 1

II.    STATEMENT OF ALLEGED FACTS .................................................... 4

III.   ARGUMENT ........................................................................................... 7

    A.     Legal Standard ........................................................................... 7

    B.     Plaintiff's Copyright Claims Fail as There Is No Substantial
        Similarity Between the Works as a Matter of Law ............................. 8

        1.     The Works as a Whole Are Not Substantially Similar ............. 10

        2.     The Steps Alone Are Not Protectable ...................................... 11

        3.     The Steps Are Not Substantially Similar to the Emote ........... 18

    C.     The Copyright Act Preempts Plaintiff's Unfair Competition Claim .. 19

    D.     Certain of Plaintiff's Requested Remedies Are Unavailable ............. 21

IV.    CONCLUSION ..................................................................................... 23

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Aaron Basha Corp. v. Felix B. Vollman, Inc.*,
  88 F. Supp. 2d 226 (S.D.N.Y. 2000) .................................................................. 13

*Abdullah v. Walt Disney Co.*,
  No. 2:15 Civ. 09581, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016) ................. 9

*Apple Comput., Inc. v. Microsoft Corp.*,
  35 F.3d 1435 (9th Cir. 1994) ..................................................................... 10, 18

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) .............................................................................................. 7

*Baez v. Pension Consulting Alliance, Inc.*,
  No. 2:17 Civ. 01938, 2017 WL 9500979 (C.D. Cal. July 20, 2017) ............. 8, 19

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) .............................................................................................. 7

*Beyond Blond Prods., LLC v. Heldman*,
  479 F. Supp. 3d 874 (C.D. Cal. 2020) ................................................................ 18

*Bibbero Sys., Inc. v. Colwell Sys., Inc.*,
  893 F.2d 1104 (9th Cir. 1990) ............................................................................ 13

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
  803 F.3d 1032 (9th Cir. 2015) ...................................................................... 11, 17

*Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*,
  No. 2:11 Civ. 05506, 2012 WL 6548505 (C.D. Cal. Dec. 14, 2012) .......... 17, 18

*Blehm v. Jacobs*,
  702 F.3d 1193 (10th Cir. 2012) .......................................................................... 11

*Boost Beauty, LLC v. Woo Signatures, LLC*,
  No. 2:18 Civ. 02960, 2018 WL 5099258 (C.D. Cal. Oct. 15, 2018) ................. 19

*Brantley v. Epic Games, Inc.*,
  463 F. Supp. 3d 616 (D. Md. 2020) ................................................. 3, 14, 20, 21

*Brown v. Entm't Merchants Ass'n*,
    564 U.S. 786 (2011)...........................................................................19

*Cabell v. Sony Pictures Entm't, Inc.*,
    425 F. App'x 42 (2d Cir. 2011) .......................................................11

*Century Tile, Inc. v. Hirsch Glass Co.*,
    467 F. App'x 651 (9th Cir. 2012)......................................................18

*Christianson v. West Pub. Co.*,
    149 F.2d 202 (9th Cir. 1945) .......................................................9, 18

*CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*,
    97 F.3d 1504 (1st Cir. 1996)........................................................13, 17

*Cusano v. Klein*,
    473 F. App'x 803 (9th Cir. 2012).............................................8, 19, 20

*DBC of N.Y., Inc. v. Merit Diamond Corp.*,
    768 F. Supp. 414 (S.D.N.Y. 1991) ...................................................14

*Dean v. Kaiser Found. Health Plan, Inc.*,
    562 F. Supp. 3d 928 (C.D. Cal. 2022) ..............................................19

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
    528 F.3d 696 (9th Cir. 2008) ...........................................................22

*E.S.S. Entm't 2000, Inc. v. Rock Star Videos, Inc.*,
    547 F.3d 1095 (9th Cir. 2008) ...........................................................8

*Entous v. Viacom Int'l, Inc.*,
    151 F. Supp. 2d 1150 (C.D. Cal. 2001)............................................20

*Express, LLC v. Forever 21, Inc.*,
    No. 09 Civ. 04514, 2010 WL 3489308 (C.D. Cal. Sept. 2, 2010) .....................13

*Feist Pubs., Inc. v. Rural Tel. Serv. Co.*,
    499 U.S. 340 (1991).........................................................................8

*Folkens v. Wyland Worldwide, LLC*,
    882 F.3d 768 (9th Cir. 2018) ...........................................................11

*Garcia v. Google, Inc.*,
    786 F.3d 733 (9th Cir. 2015) (en banc) ............................................17

*Greater L.A. Agency on Deafness, Inc. v. Cable News Network, Inc.*,
　　742 F.3d 414 (9th Cir. 2014) ......................................................................... 8, 20

*Hall v. Swift*,
　　No. 17 Civ. 06882, 2018 WL 2317548 (C.D. Cal. Feb. 13, 2018) ............... 7, 18

*Horgan v. Macmillan, Inc.*,
　　789 F.2d 157 (2d Cir. 1986) ....................................................................... 14, 15

*Inhale, Inc. v. Starbuzz Tobacco, Inc.*,
　　755 F.3d 1038 (9th Cir. 2014) ............................................................................ 17

*Int'l Biotical Corp. v. Associated Mills, Inc.*,
　　239 F. Supp. 511 (N.D. Ill. 1964) ...................................................................... 12

*Kates v. Crocker Nat'l Bank*,
　　776 F.2d 1396 (9th Cir. 1985) ........................................................................... 22

*Laws v. Sony Music Entm't, Inc.*,
　　448 F.3d 1134 (9th Cir. 2006) ........................................................................... 20

*Lions Gate Entm't Inc. v. TD Ameritrade Servs. Co.*,
　　170 F. Supp. 3d 1249 (C.D. Cal. 2016) ....................................................... 20, 21

*Lorenzana v. S. Am. Rests. Corp.*,
　　799 F.3d 31 (1st Cir. 2015) ................................................................................ 13

*Maloney v. T3Media, Inc.*,
　　853 F.3d 1004 (9th Cir. 2017) ........................................................................... 21

*Masterson Mktg., Inc. v. KSL Recreation Corp.*,
　　495 F. Supp. 2d 1044 (S.D. Cal. 2007) .............................................................. 18

*Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*,
　　724 F.2d 357 (2d Cir. 1983) .............................................................................. 11

*U.S. ex rel. Newsham v. Lockheed Missiles & Space Co.*,
　　190 F.3d 963 (9th Cir. 1999) ............................................................................. 19

*Newton v. Diamond*,
　　388 F.3d 1189 (9th Cir. 2004) ........................................................................... 10

*Ojjeh v. Brown*,
　　43 Cal. App. 5th 1027 (2019) ............................................................................ 19

*Pellegrino v. Epic Games, Inc.*,
 451 F. Supp. 3d 373 (E.D. Pa. 2020)..............................................................3, 20

*Pelt v. CBS, Inc.*,
 No. 92 Civ. 06532, 1993 WL 659605 (C.D. Cal. Oct. 25, 1993) ......................17

*Puckett v. Hernandez*,
 No. 2:16 Civ. 02199, 2016 WL 7647555 (C.D. Cal. Dec. 21, 2016)............9, 23

*Reece v. Island Treasures Art Gallery, Inc.*,
 468 F. Supp. 2d 1197 (D. Haw. 2006).........................................................11, 12

*Reflex Media, Inc. v. Pilgrim Studios, Inc.*,
 No. 2:18 Civ. 02260, 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) .................9

*Rentmeester v. Nike, Inc.*,
 883 F.3d 1111 (9th Cir. 2018) .............................................................8, 9, 11, 12

*Rosen v. Netfronts, Inc.*,
 No. 12 Civ. 00658, 2013 WL 3467205 (C.D. Cal. July 9, 2013).......................22

*Saregama India Ltd. v. Young*,
 No. 02 Civ. 09856, 2003 WL 25769784 (C.D. Cal. Mar. 11, 2003).................22

*See v. Durang*,
 711 F.2d 141 (9th Cir. 1983) ............................................................................10

*Skinder-Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*,
 914 F. Supp. 665 (D. Mass. 1995).....................................................................13

*Southco, Inc. v. Kanebridge Corp.*,
 390 F.3d 276 (3d Cir. 2004) ........................................................................13, 17

*Thomas v. Walt Disney Co.*,
 337 F. App'x 694 (9th Cir. 2009)........................................................................9

*Trenton v. Infinity Broad. Corp.*,
 865 F. Supp. 1416 (C.D. Cal. 1994)...................................................................17

*White v. Twentieth Century Fox Corp.*,
 572 F. App'x 475 (9th Cir. 2014).........................................................................9

*Wild v. NBC Univ.*,
 513 F. App'x 640 (9th Cir. 2013).....................................................................9, 10

*Wood v. Midland Credit Mgmt., Inc.*,
    No. 05 Civ. 03881, 2005 WL 3159639 (C.D. Cal. July 29, 2005)....................23

*Zekkariyas v. Univ. Music-MGB Songs*,
    No. 11 Civ. 02912, 2011 WL 13220325 (C.D. Cal. June 6, 2011)...................17

*Zhang v. Heineken N.V.*,
    No. 08 Civ. 06506, 2010 WL 11596643 (C.D. Cal. Sept. 29, 2010) ...........13, 17

*Zindel v. Fox Searchlight Pictures, Inc.*,
    No. 18 Civ. 01435, 2018 WL 3601842 (C.D. Cal. July 23, 2018).......................8

**Statutes**

17 U.S.C. § 102(a) ...........................................................................................14, 20

17 U.S.C. § 102(b) ...........................................................................................11, 17

17 U.S.C. § 301(a) ..................................................................................................20

17 U.S.C. § 412.................................................................................................4, 22

Cal. Code Civ. P. § 425.16 ...........................................................................1, 8, 19

California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200 ...........7, 23

**Rules**

Fed. R. Civ. P. 5(a) ...................................................................................................1

Fed. R. Civ. P. 12(b)(6) ..................................................................................*passim*

Fed. R. Civ. P. 12(f).................................................................................................1

**U.S. Copyright Office Refusal Letters**

Letter from U.S. Copyright Office re: The Dance by Alfonso Ribeiro -
    Variation B (Jan. 22, 2019) ...............................................................................15

Letter from U.S. Copyright Office re: The Floss (Jan. 22, 2019) ..............12, 13, 15

Letter from U.S. Copyright Office re: Milly Rock Dance (Dec. 19, 2018) ...........16

Letter from U.S. Copyright Office re: Second Request for Reconsideration for
    Refusal to Register Five-Petal Flower (July 14, 2016) .....................................16

**Other Authorities**

37 C.F.R. § 202.1 .............................................................................. 15, 17

Copyright Office Compendium § 313 ...................................................... 13

Copyright Office Compendium § 805 ................................... 12, 14, 15, 17

H.R. Rep. 94-1476 ................................................................................... 14

Defendant Epic Games, Inc. ("Epic") submits this memorandum in support of its motion to dismiss Plaintiff Kyle Hanagami's ("Plaintiff") Complaint, Dkt. 1, pursuant to Federal Rule of Civil Procedure 12(b)(6) and special motion to strike pursuant to California Code of Civil Procedure § 425.16, or in the alternative, motion to strike pursuant to Federal Rule of Civil Procedure 12(f) certain forms of relief sought by Plaintiff.

## I.   INTRODUCTION

Imagine a ballet without a *grand jeté*, a yoga class without a downward-dog pose, or the film *Dirty Dancing* without Patrick Swayze lifting Jennifer Grey over his head.  To ensure that new creative works can use these building blocks of expression, Congress made clear that, although copyright law protects choreography, it does not protect individual dance steps or simple routines.  Likewise, the Copyright Act ensures that a litigant cannot use state law to create liability for copying works that are within the subject matter of copyright (whether protected by it or not).  These protections exist for good reason as artists are often inspired by, and weave together, dance steps into their own choreography.

Through this lawsuit, Plaintiff seeks to change these fundamental principles, imposing liability where it has never existed before.[1]  As discussed below, this marked shift is foreclosed by the Copyright Act, the U.S. Copyright Office's regulations, and Ninth Circuit case law, all of which make clear that performing or incorporating into a new work a dance step or simple routine does not make someone a copyright

_____

[1] This is not the first time that Plaintiff's counsel has attempted to convince a court to change copyright law in this way.  In 2018 and 2019, Plaintiff's counsel filed eight lawsuits in this District alleging that dance steps were copied in video games, and attempting to create the "outcry on social media" that Plaintiff references in his Complaint.  After the defendants in those cases, including Epic, moved to dismiss, including on the same grounds as this motion to dismiss and that the Copyright Office had refused to register the dance steps, the plaintiffs voluntarily dismissed their complaints.  Moreover, as discussed below, when similar lawsuits were filed in different courts asserting state law claims, those courts granted motions to dismiss those claims on preemption grounds.

infringer.  Plaintiff's request to alter that approach, subjecting anyone who publicly performs a few dance steps to liability for copyright infringement, should be rejected and all claims in his Complaint dismissed.

With regard to his copyright claims (Counts I and II), Plaintiff registered with the Copyright Office a ***five-minute long***, real-world dance consisting of numerous dancers performing different steps strung together.  The Copyright Office registered the work as a whole, but in this litigation, Plaintiff cherry-picks ***four steps*** (that take two seconds to perform) (the "Steps") and asserts they have been infringed by *Fortnite.  Fortnite* is a massive, complex virtual world where people from across the world connect, meet, play, talk, compete, dance and attend concerts and cultural events.  Specifically, Plaintiff focuses his attention on four out of sixteen steps in one of *Fortnite*'s nearly 500 emotes, called "It's Complicated" (the "Emote").

Plaintiff's claim fails as a matter of law because the works—the five-minute dance that Plaintiff registered, on the one hand, and *Fortnite*, on the other—are not substantially similar.  Indeed, although Plaintiff asserts that *Fortnite* infringes his copyrights, nowhere in the Complaint does he assert, nor could he, that the works are similar as a whole: in contrast to Plaintiff's five-minute dance performed by real dancers, *Fortnite* involves a highly creative, fantasy world, containing characters and settings that have nothing to do with Plaintiff's Steps.  The Emote is only one tiny part of that world, and the accused steps are only a minority of its steps.  Plaintiff cannot avoid comparing the works as a whole and, when that analysis is conducted, it is clear that the registered work is not substantially similar to *Fortnite*, requiring dismissal of Plaintiff's claim as a matter of law.

In addition to the works as a whole not being substantially similar, Plaintiff cannot show substantial similarity between his work and the Emote as a matter of law.  As an initial matter, any copyright that Plaintiff may hold in the five-minute registered work does not extend to the two seconds of Steps in isolation.  The Steps are merely building blocks of choreographic expression, which are not protectable—just as words

and short phrases, geometric shapes, and colors are not protectable in written or printed works—as protecting them would prevent others from creating new works.  In the dance context, this legal concept is apparent from (a) the legislative history of the Copyright Act, which expressly states that "simple [dance] routines" are not copyrightable; (b) the Copyright Office's regulations, which do not permit individual dance steps or simple routines to be registered for copyright protection; and (c) Ninth Circuit case law holding that such elements are not protectable, but rather should be free for all to use.  Thus, as a matter of law, the Steps must be filtered out and cannot be considered in the substantial similarity analysis, leaving nothing to compare to the Emote.

Even if the Steps were protectable (they are not), the choreography and the Emote have marked differences, as is reflected by Plaintiff's allegations (or lack thereof).  On the one hand, Plaintiff does not allege that any of the remaining steps of his choreography were copied; and on the other hand, the majority of the Emote contains steps that do not appear anywhere in Plaintiff's work.  As even the Emote alone is not substantially similar to Plaintiff's registered work, Plaintiff's copyright claims should be dismissed for this reason as well.

Plaintiff also asserts an unfair competition claim (Count III), in which he attempts to recast the same underlying facts as a state law cause of action.  The Copyright Act, however, explicitly prohibits plaintiffs from achieving through state law that which is foreclosed by black-letter copyright law principles: claims that involve copying of material that is within the subject matter of copyright are preempted.  Indeed, in a markedly similar case where Epic was accused of copying a different dance step, the court dismissed the plaintiff's unfair competition claim as preempted, concluding that (a) the dance step, whether copyrightable or not, was within the subject matter of copyright; and (b) the claim was premised on allegations of copying.  *Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 624, 627 (D. Md. 2020); *see also Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 387–88 (E.D. Pa.

2020) (dismissing as preempted state law claims premised on copying allegations, as movement was within the subject matter of copyright).  Moreover, such use of California state law is prohibited by its anti-SLAPP statute, as *Fortnite* is an expressive work.  Thus, Plaintiff bears the burden of proving a probability of prevailing on his California law claim to avoid chilling the valid exercise of Epic's free speech rights.  As he cannot do so, the claim should be dismissed and Epic's anti-SLAPP motion granted.

Finally, although the Court need not reach this issue if it dismisses the Complaint, Plaintiff's overreaching also extends to his fees and damages theories. Plaintiff's request for attorney's fees should be stricken because 17 U.S.C. § 412 requires Plaintiff to have registered his copyright ***before*** the alleged infringement began.  Here, there can be no dispute that he registered his copyright ***after*** the alleged infringement.  Likewise, Plaintiff's requests for punitive and exemplary damages should be stricken because they are not available as remedies under the Copyright Act or California's Unfair Competition Law.  Accordingly, Epic respectfully requests that the Court grant its motion in its entirety and, as Plaintiff cannot plead around these defects, do so with prejudice.

## II.     STATEMENT OF ALLEGED FACTS

On November 11, 2017, Plaintiff published the YouTube video titled "CHARLIE - PUTH - How Long | Kyle Hanagami Choreography" ("How Long Video").[2]  Dkt. 1 (Compl.) ¶ 16.  The video contains a five-minute dance performed to the song "How Long," by Charlie Puth.  As can be observed by a copy of the video, it contains about 520 counts of music, broken down into 104 counts of music for each of five different groups of dancers.  Declaration of Dale M. Cendali, Esq., dated May 27,

_____

[2]  Although Epic disputes the veracity of Plaintiff's allegations, as required by the caselaw, it assumes they are true for the limited purpose of this motion.

2022 ("Cendali Decl.") Ex. A (deposit copy of How Long Video).[3]  As shown below, the dancers perform a variety of different movements including slides, jumps, leg lifts, spins, waves, rolls, and freestyle choreography.

  

 

*Id.*  Of the five-minute long video, the Steps take about two seconds to perform.  *Id.* The lower half of the body simply repeats the same movement: the right foot kicks forward, then touches to the side as the hips twist counterclockwise.  The upper body performs four movements: a shoulder touch; a head pull; a bent-arm, finger point; and an arm opening.

Plaintiff alleges that Epic appropriated the Steps in *Fortnite*.  Compl. ¶ 2. *Fortnite* features an extensive world, where players may explore, build, and destroy, and also battle against each other via player-to-player combat.  *See id.* ¶¶ 4, 20–22. Players choose to represent themselves by picking an avatar and customizing it.  *Id.* ¶ 22.  *Fortnite*'s avatars feature a variety of human features, non-human features (such as a banana outfit or animal head), outfits, and weapons, as shown below.

---

[3]  Exhibits A and B to the Cendali Declaration should be considered by the Court for the reasons set forth in Epic's concurrently-filed Request for Judicial Notice.

 

Cendali Decl. ¶ 3; Compl. ¶ 22.  Players can customize their in-game avatars by using new characters, pickaxes, gliders, clothes, and emotes.  Compl. ¶ 22.  Emotes are animations players use to, among other things, celebrate a victory in a battle royale game or dance while attending concerts.  Compl. ¶¶ 22–30.

On August 25, 2020, Epic released Chapter 2, Season 3 of *Fortnite*, which includes the Emote.  *Id.* ¶ 38.  The Emote consists of 16 counts of movement, only four of which are accused of being copied from Plaintiff.  The Emote is accompanied by an original soundtrack without lyrics, not the "How Long" by Charlie Puth song to which the registered work is performed in Plaintiff's deposit copy.  Some sample images of the Emote being performed are included below:

  



Cendali Decl. Ex. B.

On February 18, 2021, six months after Epic released the Emote, Plaintiff applied for a copyright registration on the choreography contained in the How Long Video. Compl. ¶ 56, Ex. A (Copyright Registration No. PA 2-277-839), at 2. The effective date of the registration is February 20, 2021. Compl. Ex. A, at 3. According to the registration certificate, Plaintiff's copyright claim was limited to the choreography contained in the How Long Video, not the music or audiovisual elements. *Id.*

On March 29, 2022, Plaintiff filed this case. Specifically, Plaintiff asserts three causes of action: (1) Direct infringement of copyright; (2) Contributory infringement of copyright; and (3) Unfair competition under California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200. *Id.*

## III.   ARGUMENT

### A.   Legal Standard

To survive a Rule 12(b)(6) motion to dismiss, the Complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). Plaintiffs must plead "factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* "The Court must disregard allegations that are legal conclusions, even when disguised as facts." *Hall v. Swift*, No. 17 Civ. 06882, 2018

1  WL 2317548, at \*3 (C.D. Cal. Feb. 13, 2018).  It, however, may consider works

2  referenced in the Complaint.  *See Zindel v. Fox Searchlight Pictures, Inc.*, No. 18 Civ.

3  01435, 2018 WL 3601842, at \*3 (C.D. Cal. July 23, 2018).

4  California's anti-SLAPP statute subjects to a special motion to strike any "cause

5  of action against a person arising from any act of that person in furtherance of the

6  person's right of . . . free speech . . . in connection with a public issue."  Cal. Code

7  Civ. P. § 425.16(b)(1).  Anti-SLAPP motions require a two-part analysis.  ***First***, the

8  court determines whether "the challenged cause of action arises from activity

9  protected under the statute."  *Baez v. Pension Consulting Alliance, Inc.*, No. 2:17 Civ.

10  01938, 2017 WL 9500979, at \*2 (C.D. Cal. July 20, 2017).  "California courts have

11  interpreted this piece of the defendant's threshold showing rather loosely . . . and have

12  held that a court must generally presume the validity of the claimed constitutional

13  right in the first step of the anti- SLAPP analysis."  *Greater L.A. Agency on Deafness,*

14  *Inc. v. Cable News Network, Inc.*, 742 F.3d 414, 422 (9th Cir. 2014) (internal

15  quotation marks omitted).[4]  ***Second***, the burden shifts to the plaintiff to "demonstrate[]

16  a probability of prevailing on the merits of its" claims.  *GLAAD*, 742 F.3d at 425.

17  **B.  Plaintiff's Copyright Claims Fail as There Is No Substantial**

18  **Similarity Between the Works as a Matter of Law**

19  Plaintiff's copyright claims (Counts I and II) should be dismissed as a matter of

20  law.  To state a claim of copyright infringement, Plaintiff must allege: "(1) ownership

21  of a valid copyright, and (2) copying of constituent elements of the work that are

22  original."  *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991).  To

23  assess the second element, courts look to whether the works are "substantially similar"

24  by applying the two-part "extrinsic" and "intrinsic" tests.  *Rentmeester v. Nike, Inc.*,

25

26  [4]  Courts routinely find creative works, like video games, satisfy step one.  *See*
*Cusano v. Klein*, 473 F. App'x 803, 804 (9th Cir. 2012) (collecting cases finding

27  first prong satisfied by television programs and video games); *E.S.S. Entm't 2000,*
*Inc. v. Rock Star Videos, Inc.*, 547 F.3d 1095, 1099 (9th Cir. 2008) (*Grand Theft*

28  *Auto: San Andreas* video game protected).

883 F.3d 1111, 1118 (9th Cir. 2018).  The extrinsic test requires courts to "'filter out' the unprotectable elements of the plaintiff's work" and then compare the "protectable elements that remain" to "corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.*  "The intrinsic test requires a more holistic, subjective comparison of the works to determine whether they are substantially similar in 'total concept and feel.'"  *Id.*  If either test fails, there is no substantial similarity.

"When the copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss."  *Christianson v. West Pub. Co.*, 149 F.2d 202, 203 (9th Cir. 1945).  A motion to dismiss should be granted where, after comparing the copyrighted and accused works, the ***extrinsic test*** is not satisfied.  *See id.*; *Wild v. NBC Univ.*, 513 F. App'x 640, 642 (9th Cir. 2013) (affirming dismissal because "Plaintiff cannot satisfy the extrinsic test"); *Puckett v. Hernandez*, No. 2:16 Civ. 02199, 2016 WL 7647555 (C.D. Cal. Dec. 21, 2016) (Wilson, J.) (no substantial similarity despite plaintiff pointing to common phrases between his song and Bruno Mars' song); *Abdullah v. Walt Disney Co.*, No. 2:15 Civ. 09581, 2016 WL 5380930 (C.D. Cal. Mar. 14, 2016) (Wilson, J.) (denying motion for reconsideration of dismissal based on a finding of no substantial similarities in plot, sequence, theme, dialogue); *Reflex Media, Inc. v. Pilgrim Studios, Inc.*, No. 2:18 Civ. 02260, 2018 WL 6566561 (C.D. Cal. Aug. 27, 2018) (dismissing copyright claims with prejudice because of lack of substantial similarity between two shows with identical titles and similar plots, locations, and characters).  Indeed, the Ninth Circuit routinely affirms such dismissals. *See, e.g.*, *Rentmeester*, 883 F.3d at 1121 (affirming dismissal where photographs were not substantially similar despite similar subject matter and pose); *White v. Twentieth Century Fox Corp.*, 572 F. App'x 475, 477 (9th Cir. 2014) (affirming dismissal where "most of the alleged similarities [between films] are not protectable"); *Thomas v. Walt*

1  *Disney Co.*, 337 F. App'x 694, 694 (9th Cir. 2009) (affirming dismissal because

2  "literary work was not 'substantially similar' to defendants' animated movie").

3          1.     <u>The Works as a Whole Are Not Substantially Similar</u>

4        When this extrinsic analysis is conducted, the Ninth Circuit requires the works

5  to be "considered as a whole." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435,

6  1443 (9th Cir. 1994); *See v. Durang*, 711 F.2d 141, 144 (9th Cir. 1983) (analyzing

7  works "as a whole" to consider similarities "in context").

8        Here, however, Plaintiff does not even attempt to claim that his registered work

9  as a whole is substantially similar to *Fortnite*.  Nor could he.  *Fortnite* involves a

10  highly creative fantasy world in which players can explore, build, destroy, and battle

11  each other.  Players can select emotes to reflect emotion in the game, and the Emote is

12  one of nearly five hundred available.  By contrast, Plaintiff's registered work contains

13  steps performed to "How Long," by Charlie Puth, by groups of dancers in a dance

14  studio in Los Angeles, California.  Plaintiff tacitly admits the works' dissimilarity as

15  nowhere in the Complaint does he suggest that (a) any other part of the five-minute

16  choreography he registered appears in *Fortnite*, or (b) any part of *Fortnite* is similar to

17  the work other than the Emote—not *Fortnite*'s battle-royale format, characters,

18  setting, theme, or mood.  Thus, as a matter of law, Plaintiff's registered work is not

19  substantially similar to *Fortnite*.  *See Wild*, 513 F. App'x at 641 (no substantial

20  similarity due to differences in "plot and storylines, their characters, the dialogue, the

21  setting and themes, and the mood").

22        Instead, the Complaint's fundamental flaw is that, whatever copyright Plaintiff

23  may have in his five minutes of choreography, he asserts only the Steps were copied.

24  Given the enormity of *Fortnite* as a whole, copying steps that take two seconds to

25  perform does not make the works substantially similar.  *See Newton v. Diamond*, 388

26  F.3d 1189, 1195–96 (9th Cir. 2004) (six-second sampling consisting of "roughly two

27  percent of the four-and-a-half-minute" recording).  Accordingly, the copyright claims

28  should be dismissed for this reason alone

## 2.    The Steps Alone Are Not Protectable

In addition to failing to establish substantial similarity when the works as a whole are compared, Plaintiff cannot state a claim as to the Emote in isolation.  As an initial matter, although Plaintiff registered the choreography in the five-minute How Long Video, as he only claims that the Steps are copied, he must independently show that they are protectable.  He cannot do so in light of two legal principles.

***First***, the Copyright Act makes clear that, even when a work is copyrightable, that copyright does not extend to unprotectable elements.  *See* 17 U.S.C. § 102(b) ("In no case does copyright protection . . . extend to any idea . . . .").  That principle has particular importance in works involving movements.  For example, in *Bikram's Yoga College of India, L.P. v. Evolation Yoga, LLC*, the plaintiff had registered a book, but the Ninth Circuit held that its copyright did not extend to his sequence of yoga steps.  *See* 803 F.3d 1032, 1040 (9th Cir. 2015).  Similarly, in *Rentmeester*, although the plaintiff may have held a copyright in his photograph, the Ninth Circuit affirmed a Rule 12(b)(6) dismissal due to a lack of substantial similarity, holding that the plaintiff did not own the "general 'idea' or 'concept' . . . of [Michael] Jordan in a leaping, grand jeté-inspired" movement that appeared in the work.  *Id.* at 1121 (movement at issue shown below); *see also Folkens v. Wyland Worldwide, LLC*, 882 F.3d 768, 774 (9th Cir. 2018) (dolphins' pose in artistic work unprotectable).  And in *Reece v. Island Treasures Art Gallery, Inc.*, despite the fact that the parties' works showed the same dance movement (shown below), the court held that the "idea of a hula dancer performing an 'ike movement in the hula kahiko style from the noho position is not protected."  468 F. Supp. 2d 1197, 1206 (D. Haw. 2006) (works not substantially similar).[5]

---

[5]  *See also Blehm v. Jacobs*, 702 F.3d 1193, 1201 (10th Cir. 2012) ("a copyright owner has no monopoly over the idea of a muscular doll in a standard pose"); *Cabell v. Sony Pictures Entm't, Inc.*, 425 F. App'x 42 (2d Cir. 2011) ("brandishing a blow dryer as a weapon" and "fighting poses" were "unprotectable ideas"); *Mattel, Inc. v. Azrak-Hamway Int'l, Inc.*, 724 F.2d 357, 360 (2d Cir. 1983)






*Rentmeester* Movement                          *Reece* Movement[6]
883 F.3d at 1126

Likewise, when the Copyright Office registers a choreographic work, that registration does not apply to individual dance steps or simple routines within the work.  U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.5(A) (3d ed. 2017).  For example, the Copyright Office refused to register the "Floss" dance steps, which consisted of swaying the hips side-to-side while bending the knees on alternating sides and swinging the arms while keeping the wrists in a straight line, first at a slower tempo and then at a very fast tempo.  Dkt. 35-7, at 7 (Copyright Office refusal letter), *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. D).  When those steps later were incorporated into a much longer work, the Copyright Office did register the work.  Given the prior attempt to register the "Floss," however, the Copyright Office made clear in the registration certificate that the work was "registered based on original selection, coordination, and/or arrangement of steps or movements" and that the "[r]egistration does not extend to individual dance steps."  Dkt. 35-4, at 2 (Copyright

---

("Though the dolls' bodies are very similar, nearly all of the similarity can be attributed to the fact that both are artist's renderings of the same unprotectable idea—a superhuman muscleman crouching in what since Neanderthal times has been a traditional fighting pose."); *Int'l Biotical Corp. v. Associated Mills, Inc.*, 239 F. Supp. 511, 514 (N.D. Ill. 1964) (various poses were unprotectable ideas).

[6] No. 06 Civ. 00489 (D. Haw.) (Dkt. 63-14, Ex. G) (Dkt. 63-15, Ex. H) (also filed herewith as Cendali Decl. Ex. C).

1    Office public catalog entry for "Flossin Dance"), *Redd v. Epic Games, Inc.*, No. 2:18

2    Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. E).

3           Here, whatever copyright may exist in the registered choreography as a whole,

4    the Steps standing alone must qualify as protectable to be considered in the substantial

5    similarity analysis.

6           ***Second***, it is black-letter copyright law that individual elements of works are

7    not protectable where they involve the building blocks of creative expression that, if

8    protected, would inhibit the creation of new works.  For example, "words and short

9    phrases" are not protectable.  *Zhang v. Heineken N.V.*, No. 08 Civ. 06506, 2010 WL

10   11596643, at *4 (C.D. Cal. Sept. 29, 2010).  This is because "even if the word or short

11   phrase is novel or distinctive or lends itself to a play on words," it contains "a *de*

12   *minimis* amount of authorship."  Compendium § 313.4(C).  Similarly, "variations of

13   long-established Chinese word characters" were not protectable as doing so would

14   "effectively give [plaintiff] a monopoly on renditions of these five Chinese

15   characters."  *Zhang*, 2010 WL 11596643, at *5 (dismissal on the pleadings).  "[B]lank

16   forms which do not convey information are not copyrightable" as they are where

17   information is recorded, and do not convey information themselves.  *Bibbero Sys.,*

18   *Inc. v. Colwell Sys., Inc.*, 893 F.2d 1104, 1106 (9th Cir. 1990).  And "mere changes in

19   color are generally not subject to copyright protection."  *Express, LLC v. Forever 21,*

20   *Inc.*, No. 09 Civ. 04514, 2010 WL 3489308, at *6 (C.D. Cal. Sept. 2, 2010).[7]

21

22   [7] *See also Lorenzana v. S. Am. Rests. Corp.*, 799 F.3d 31, 34 (1st Cir. 2015)

23   (affirming dismissal as recipe instructions and name not protectable); *Southco, Inc.*
     *v. Kanebridge Corp.*, 390 F.3d 276, 287 (3d Cir. 2004) ("part numbers" not

24   protectable); *CMM Cable Rep, Inc. v. Ocean Coast Props., Inc.*, 97 F.3d 1504,
     1520 (1st Cir. 1996) ("ordinary employment phraseology" not protectable); *Aaron*

25   *Basha Corp. v. Felix B. Vollman, Inc.*, 88 F. Supp. 2d 226, 230 (S.D.N.Y. 2000)
     (not protectable to use "decorative features . . . commonly used throughout the

26   jewelry business," such as "precious metals, gemstones, and enamel"); *Skinder-*
     *Strauss Assocs. v. Mass. Continuing Legal Educ., Inc.*, 914 F. Supp. 665, 674 (D.

27   Mass. 1995) ("a standard calendar, a list of important holidays, a map of
     Massachusetts, a national map including time zones, and a date calculation chart"

28

This principle applies with equal force to the field of dance.  The Copyright Act protects works of authorship, including "choreographic works."  17 U.S.C. § 102(a)(4).  As explained in the Compendium of U.S. Copyright Office Practices— the Copyright Office's substantive manual for its staff on the contours of copyright law and Office policies—choreography is the "composition and arrangement of 'a related series of dance movements and patterns organized into a coherent whole.'" Compendium § 805.1 (quoting *Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986)).  Thus, the Copyright Office would register a "choreographed music video for a song titled 'Made in the USA'" if the dance "is a complex and intricate work performed by a troupe of professional dancers."  *Id.* § 805.5(A).

Critically, however, "[c]horeographic works are distinguished from *de minimis* movements, dance steps, social, dances, and simple routines, which are not copyrightable."  *Brantley*, 463 F. Supp. 3d at 622 (relying on Compendium § 805.5(A)–(B)).  That is because, in recognition that the constituent parts of a choreographic work must be available for others to use, Congress was explicit that "simple routines" are neither choreographic works nor copyrightable, H.R. Rep. 94-1476, at 53, and the Copyright Office's Compendium explains that "[i]ndividual movements or dance steps by themselves are not copyrightable."  *Brantley*, 463 F. Supp. 3d at 622 (citing Compendium § 805.5(A)).  Other examples of unprotectable movements include "the basic waltz step, the hustle step, the grapevine, or the second position in classical ballet."  *Id.* (likewise, an endzone dance that "consists of a few movements of the legs, shoulders, and arms" is not protectable).  Further, "short dance routines consisting of only a few movements or steps with minor linear or spatial variations, even if the routine is novel or distinctive," are not protectable.  *Id.*

As a result, "it is not possible to copyright a series of dance movements that constitute a relatively small part of a theatrical performance, such as a discrete routine

_____

not protectable); *DBC of N.Y., Inc. v. Merit Diamond Corp.*, 768 F. Supp. 414, 416 (S.D.N.Y. 1991) ("Familiar symbols or designs" not protectable).

within a variety show, dance contest, or other exhibition." *Id.* § 805.5(B)(1).  Thus, although the "Made in the USA" dance above might be registered as a whole, if "[d]uring the chorus, the dancers form the letters 'U, S, A' with their arms . . . the Office would reject a claim limited to the 'U, S, A' gesture." *Id.* § 805.5(A).  This approach makes sense as "[i]ndividual dance steps and short dance routines are the building blocks of choreographic expression, and allowing copyright protection for these elements would impede rather than foster creative expression." *Id.* (citing *Horgan*, 789 F.2d at 161).  Thus, "individual elements of a dance are not copyrightable for the same reason that individual words, numbers, notes, colors, or shapes are not protected by the copyright law." *Id.* (citing 37 C.F.R. § 202.1).  As discussed above, courts routinely hold that these types of elements are unprotectable, and will dismiss copyright claims based on them at the pleadings stage. *See supra* 13.

The Copyright Office's prior applications of this standard are particularly useful here.  For example, in the prior cases filed by Plaintiff's counsel against Epic, the dance steps at issue frequently were denied registration.  In one particularly salient instance, the plaintiff attempted to register the "Carlton," which involved multiple dance steps: first, the "dancer sways their hips as they step from side to side, while swinging their arms in an exaggerated manner"; then, "the dancer takes two steps to each side while opening and closing their legs and their arms in unison"; and finally, the "dancer's feet are still and they lower one hand from above their head to the middle of their chest while fluttering their fingers." Dkt. 23-8, at 7 (Copyright Office refusal letter), *Ribeiro v. Epic Games, Inc.*, No. 2:18 Civ. 10412 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. F).  The Copyright Office refused registration because the "Carlton" was merely a "simple routine." *Id.* at 6.[8]

---

[8] The Copyright Office refused to register similar simple routines in other cases. Dkt. 35-7, at 7 (Copyright Office refusal letter for the "Floss" dance steps), *Redd v. Epic Games, Inc.*, No. 2:18 Civ. 10444 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. D); Dkt. 59-3, at 8 (Copyright Office refusal letter for the "Milly Rock" dance steps, which consisted of a side step with an accompanying swinging arm

In another example, the Copyright Office refused registration of a complicated dance routine by world-renowned modern dance company Pilobolus titled "Five-Petal Flower." The Five-Petal Flower dance routine was described as follows:

> On the left-hand side is the silhouette of a woman facing the right side of the screen. On the right-hand side several people quickly tumble onto the stage, forming the silhouette of a five-petal flower with their intertwined bodies. Simultaneously, the silhouette of a giant hand moves from the left to the right side of the screen, and appears to pull at the top of the five-petal flower. The hand then points at the flower formation in a common gesture that means "stay put." The flower formation stays still for the remainder of the video. The hand moves back to the left side of the screen and appears to pluck off the head of the woman, who shrugs her arms and slightly kicks her legs outward as if stunned. Her hands reach for the headless top of her body to feel for the head, and then return to her sides. The giant hand moves over the woman's body and her head reappears; the hand moves again and most of her body disappears underneath the hand. The woman remains near-motionless before the video abruptly ends.

Letter from U.S. Copyright Office to Puo-I "Bonnie" Lee (dated July 14, 2016), *available at* https://www.copyright.gov/rulings-filings/review-board/docs/five-petalflower.pdf ("Pilobous Letter") (also filed herewith as Cendali Decl. Ex. H). Despite the detailed description of Pilobolus' dance, the Copyright Office concluded that the routine was "*de minimis*" because it consisted of "simple movements" that were "insufficient to enable copyright registration." *Id.* at 4.

---

movement and movement of the ribs that was then repeated on the other side and is performed at a quick tempo), *Ferguson v. Epic Games, Inc.*, No. 2:18 Civ. 10110 (C.D. Cal.) (also filed herewith as Cendali Decl. Ex. G).

1    The Copyright Office's guidance is critical as the Ninth Circuit has held that,

2    "[w]hen interpreting the Copyright Act," courts should "defer to the Copyright

3    Office's interpretations," *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1041

4    (9th Cir. 2014), because of its "body of experience and informed judgment." *Garcia*

5    *v. Google, Inc.*, 786 F.3d 733, 742 (9th Cir. 2015) (en banc). For example, the

6    Copyright Office has determined that "examples of works not subject to copyright"

7    include "[w]ords and short phrases." Material Not Subject to Copyright, 37 C.F.R.

8    § 202.1(a) (2018). Courts routinely dismiss cases on the pleadings relying solely on

9    this regulation. *See Zekkariyas v. Univ. Music-MGB Songs*, No. 11 Civ. 02912, 2011

10   WL 13220325, at *2 (C.D. Cal. June 6, 2011) (granting Rule 12(b)(6) motion based

11   solely on regulation); *Zhang*, 2010 WL 11596643, at *5 (quoting regulation for

12   proposition that "'words and short phrases' are not copyrightable"); *see also Southco,*

13   *Inc. v. Kanebridge Corp.*, 390 F.3d 276, 286 (3d Cir. 2004); *CMM*, 97 F.3d at 1520

14   (same); *Trenton v. Infinity Broad. Corp.*, 865 F. Supp. 1416, 1426 (C.D. Cal. 1994)

15   (same); *Pelt v. CBS, Inc.*, No. 92 Civ. 06532, 1993 WL 659605, at *3 (C.D. Cal. Oct.

16   25, 1993) (same).

17          Consistent with the foregoing, in *Bikram's Yoga College of India, L.P. v.*

18   *Evolation Yoga, LLC*, the court held that a "Sequence of 26 yoga poses" was too

19   simple to qualify as a choreographic work. No. 2:11 Civ. 05506, 2012 WL 6548505,

20   at *4 (C.D. Cal. Dec. 14, 2012). On appeal, the Ninth Circuit acknowledged the

21   touchstones of dance copyright discussed above, but focused its analysis on the fact

22   that the yoga poses were uncopyrightable under 17 U.S.C. § 102(b). *Bikram's*, 803

23   F.3d at 1043.

24          Here, Plaintiff likewise cannot establish that the Steps are protectable,

25   particularly given that they are even simpler and shorter than (1) the multi-step

26   "Carlton," (2) Pilobolus' intricate modern dance piece, and (3) the 26 poses in

27   *Bikram's*. They are merely a sequence of hip twists and arm motions that are the kind

28   of movements that are unprotectable on their own. Compendium § 805.5(A) (dance

1  that "merely consists of a few movements of the legs, shoulders, and arms"

2  unprotectable); Pilobolus Letter at 4.  Moreover, they are indisputably shorter than the

3  sequence of 26 yoga poses that were denied protection by the Ninth Circuit.

4  *Bikram's*, 2012 WL 6548505, at *4.

5          3.   <u>The Steps Are Not Substantially Similar to the Emote</u>

6        As Plaintiff's registration of the five-minute choreographic work does not

7  extend to the Steps individually, they must be filtered out of the substantial similarity

8  analysis.  *Beyond Blond Prods., LLC v. Heldman*, 479 F. Supp. 3d 874, 882–83 (C.D.

9  Cal. 2020) (holding that copyright registration did not provide protection to

10  combination of two unprotectable elements); *Apple*, 35 F.3d at 1443 ("[T]he

11  unprotectable elements have to be identified, or filtered, before the works can be

12  considered as a whole.").  With no protectable elements to compare to the Emote,

13  there can be no substantial similarity, and Plaintiff's copyright claim must be

14  dismissed.[9]  *See Christianson*, 149 F.2d at 204 (affirming grant of motion to dismiss

15  where only similarities between two maps were unoriginal or mere ideas); *Hall*, 2018

16  WL 2317548, at *8 (granting Rule 12(b)(6) motion where "only thing that Plaintiffs

17  allege Defendants copied" was "too brief, unoriginal, and uncreative to warrant

18  protection").[10]

19        Even if the Steps were protectable (to be clear, they are not), dismissal would

20  be warranted given the major differences between the Steps and the Emote.

21  Specifically, the Emote contains 16 counts of movement, and Plaintiff does not allege

22

23  ───────────────

24  [9]  Moreover, as previously discussed, the works as a whole are not substantially
    similar.  *See supra* 10.

25  [10]  Even if the Dance Step had a small sliver of copyright protection, such a thin

26  copyright would require a showing of "virtually identical" copying.  *Century Tile,
    Inc. v. Hirsch Glass Co.*, 467 F. App'x 651, 652 (9th Cir. 2012).  In such

27  circumstances, "even relatively small differences . . . may exclude copyright
    infringement."  *Masterson Mktg., Inc. v. KSL Recreation Corp.*, 495 F. Supp. 2d

28  1044, 1048 (S.D. Cal. 2007).

1    that 12 of those counts, or 75%, were copied.  This is for good reason as those

2    movements do not appear in Plaintiff's work.  Thus, as the registered work is not

3    substantially similar to the Emote, Counts I and II should be dismissed.  *See Boost*

4    *Beauty, LLC v. Woo Signatures, LLC*, No. 2:18 Civ. 02960, 2018 WL 5099258, at *5

5    (C.D. Cal. Oct. 15, 2018) (contributory infringement claim must be dismissed if direct

6    infringement claim is dismissed).

7              **C.      The Copyright Act Preempts Plaintiff's Unfair Competition Claim**

8              Plaintiff's remaining claim for unfair competition (Count III) should be

9    dismissed because it is preempted by the Copyright Act and, by asserting it, Plaintiff

10   has violated California's anti-SLAPP statute.  Under that statute, when a state law

11   claim is asserted against an expressive work, like *Fortnite*, it is the ***plaintiff's*** burden

12   to prove a probability of prevailing to avoid chilling the valid exercise of free speech

13   rights.  Cal. Code Civ. P. § 425.16(b)(1); *see Dean v. Kaiser Found. Health Plan, Inc.*,

14   562 F. Supp. 3d 928, 928 (C.D. Cal. 2022) (citing *U.S. ex rel. Newsham v. Lockheed*

15   *Missiles & Space Co.*, 190 F.3d 963 (9th Cir. 1999)) ("California's anti-SLAPP

16   statute may be used to challenge state law claims in federal question cases.").  An

17   anti-SLAPP motion requires a two-part analysis, which is satisfied here.

18         ***First***, the court determines whether "the challenged cause of action arises from

19   activity protected under the statute," *Baez*, 2017 WL 9500979, at *2, the provisions of

20   which "must be construed broadly."  *Ojjeh v. Brown*, 43 Cal. App. 5th 1027, 1035

21   (2019).  Plaintiff's unfair competition claim targets *Fortnite*.  Compl. ¶ 85.  Thus, as

22   courts have repeatedly held that "video games qualify for First Amendment

23   protection," *Brown v. Entm't Merchants Ass'n*, 564 U.S. 786, 790 (2011), this alone

24   satisfies the first prong.  *See Cusano*, 473 F. App'x at 804 (video games satisfy step

25   one of anti-SLAPP analysis).  Moreover, Plaintiff has asserted that his dancing, as

26   well as Epic's alleged infringement thereof, is a matter of public concern.  Compl.

27   ¶¶ 15, 34, 51, 64, 78.  This too establishes the first prong.  *See Ojjeh*, 43 Cal. App. 5th

28

at 1042–43 (discussing "functional relationship between the speech and the public conversation about the matter of public interest").

*Second*, the burden shifts to Plaintiff to "demonstrate[] a probability of prevailing on the merits of" his claims. *GLAAD*, 742 F.3d at 425. Plaintiff cannot do so because his claim is preempted. The Copyright Act provides the exclusive remedy for "all legal or equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright." 17 U.S.C. § 301(a). A state law claim is preempted if (1) the work is within the type of works protected by copyright, and (2) the claim seeks to vindicate rights equivalent to those protected by copyright law. *Laws v. Sony Music Entm't, Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006) (right of publicity claim preempted).

As to the first prong, Plaintiff's unfair competition claim is predicated on the same dance that forms the basis of his copyright claims. Compl. ¶¶ 84, 85 (allegations based on "Hanagami's dance" and "Registered Choreography"). As choreography is the subject matter of copyright, 17 U.S.C. § 102(a)(4), the first prong is satisfied. *Cusano*, 473 F. App'x at 804 (first prong satisfied by types of works listed in 17 U.S.C. § 102(a)).[11] Indeed, like Plaintiff here, the plaintiffs in *Brantley* asserted an unfair competition claim based on Epic's alleged use of their dance step, but the claim was dismissed as preempted because "the misappropriation of an original work" formed "the gravamen of both types of claims." 463 F. Supp. 3d at 627; *Pellegrino*, 451 F. Supp. 3d at 387–88 (dismissing as preempted state law claims concerning plaintiff's movement that were alleged to have been copied into *Fortnite* as movement was within the subject matter of copyright). Similarly, the plaintiff in *Lions Gate*

---

[11] Even if the Steps are not copyrightable, they still fall "within the 'subject matter of copyright' for the purposes of preemption analysis" as even unprotected subject matter satisfies the first prong. *Entous v. Viacom Int'l, Inc.*, 151 F. Supp. 2d 1150, 1159 (C.D. Cal. 2001); *see also Brantley*, 463 F. Supp. 3d at 624 (as "scope of copyright preemption is broader than that of copyright protection, it is sufficient . . . that [dance step] is within the 'general subject matter' of copyright").

*Entertainment Inc. v. TD Ameritrade Services Co.* asserted an unfair competition claim based on the use of the dance lift from the film *Dirty Dancing* where Patrick Swayze lifts Jennifer Grey over his head.  170 F. Supp. 3d 1249, 1254 (C.D. Cal. 2016).  That claim too was preempted.  *Id.* at 1264 (dance lift subject matter of copyright).

As to the second prong, no extra element makes Plaintiff's unfair competition claim different from a copyright claim as the alleged acts of unfair competition are quintessential acts of copyright infringement: copying, use, and creating a derivative work.  Compl. ¶¶ 84 ("By misappropriating Hanagami's dance and through the improper copying and use of the Registered Choreography"), 85 ("copying the 'It's Complicated' emote").  Plaintiff's unfair competition claim even explicitly seeks to enjoin "Defendants . . . from further using his ***Registered Choreography***."  *Id.* ¶ 87 (emphasis added).  Thus, Plaintiff's unfair competition claim seeks to vindicate rights equivalent to those protected by copyright law and is preempted.  *See Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017) (affirming grant of special motion to strike and dismissal of unfair competition claim where use was not "independent of the display, reproduction, and distribution of the copyrighted material"); *Brantley*, 463 F. Supp. 3d at 627 (holding that "rights protected by the unfair competition claims are not qualitatively different from those protected by the Copyright Act because the gravamen of both types of claims is the misappropriation of an original work").

As Plaintiff's unfair competition claim is preempted by the Copyright Act, Plaintiff cannot satisfy his burden under California's anti-SLAPP statute, and the claim should be dismissed.

### D.   Certain of Plaintiff's Requested Remedies Are Unavailable

If the Court does not dismiss Plaintiff's entire Complaint, several forms of damages should be stricken because Plaintiff is precluded from seeking them as a matter of law.

***First***, Plaintiff requests "attorneys' fees" in connection with his copyright claim.  Fees are unavailable because Plaintiff did not register his copyright until after the alleged infringement began.  Compl. ¶ 67.  The Copyright Act states that "no award of statutory damages or of attorney's fees . . . shall be made for . . . any infringement of copyright commenced after first publication of the work and before the effective date of its registration, unless such registration is made within three months after the first publication of the work."  17 U.S.C. § 412.  Plaintiff admits that the Emote became available on August 25, 2020, Compl. ¶ 38, ***after*** Plaintiff first published the How Long Video in 2017, *id.* ¶ 1, but ***before*** February 20, 2021, the effective date of Plaintiff's registration, *id.* ¶ 56.[12]  Thus, Plaintiff is not entitled to attorney's fees.  *See Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th Cir. 2008) (attorney's fees not available where "infringement commenced prior to . . . registration date").[13]

***Second***, although Plaintiff seeks punitive and exemplary damages, Compl. ¶¶ 68, 82, they are not available as a remedy for copyright claims.  *See Saregama India Ltd. v. Young*, No. 02 Civ. 09856, 2003 WL 25769784, at *1 (C.D. Cal. Mar. 11, 2003) ("Punitive damages are not available under the Copyright Act.").

***Third***, Plaintiff seeks punitive damages and exemplary damages on his unfair competition claims.  Compl. 23:12.  The Ninth Circuit, however, holds that "California law does not recognize the recovery of damages by individuals for unfair business practices."  *Kates v. Crocker Nat'l Bank*, 776 F.2d 1396, 1398 (9th Cir.

---

[12] Plaintiff also would not benefit from the three-month publication safe harbor as the How Long Video was published in 2017, but Plaintiff did not apply to register it until 2021.  Compl. ¶ 16, Ex. A (registration certificate) at 2–3.

[13] That the Emote was available in *Fortnite* after Plaintiff registered his copyright does not change the analysis.  *See Rosen v. Netfronts, Inc.*, No. 12 Civ. 00658, 2013 WL 3467205, at *3 (C.D. Cal. July 9, 2013) ("Under the doctrine of continuing infringement, 'the first act of infringement in a series of ongoing infringements of the same kind marks the commencement of one continuing infringement under § 412.'" (citing *Derek Andrew, Inc.*, 528 F.3d at 699)).

1  1985); *see also Wood v. Midland Credit Mgmt., Inc.*, No. 05 Civ. 03881, 2005 WL

2  3159639, at *5 (C.D. Cal. July 29, 2005) (holding that "neither nonrestitutionary nor

3  punitive damages are an available form of remedy under California Business and

4  Professions Code § 17200").  For these reasons, Plaintiff's requests for punitive and

5  exemplary damages should be stricken.

6  **IV.  CONCLUSION**

7       For the foregoing reasons, Epic respectfully requests that Plaintiff's Complaint

8  be dismissed in its entirety with prejudice, as amendment would be futile.  *See*

9  *Puckett*, 2016 WL 7647555, at *7.

10

11  DATED:  May 27, 2022                     Respectfully submitted,

12

13                                          */s/ Dale M. Cendali*
                                            Dale M. Cendali (admitted *pro hac vice*)
14                                          dale.cendali@kirkland.com
                                            Joshua L. Simmons (admitted *pro hac vice*)
15                                          joshua.simmons@kirkland.com
                                            KIRKLAND & ELLIS LLP
16                                          601 Lexington Avenue
                                            New York, New York 10022
17                                          Telephone: (212) 446-4800
                                            Facsimile: (212) 446-4900
18
                                            Yungmoon Chang (SBN 311673)
19                                          yungmoon.chang@kirkland.com
                                            KIRKLAND & ELLIS LLP
20                                          2049 Century Park East
                                            Los Angeles, CA 90067
21                                          Telephone: (310) 552-4200
                                            Facsimile: (310) 552-5900
22
                                            *Attorneys for Defendant Epic Games, Inc.*
23

24

25

26

27

28

1   **PROOF OF SERVICE**

2      On May 27, 2022, I electronically filed the foregoing **MEMORANDUM OF**

3   **POINTS AND AUTHORITIES IN SUPPORT OF DEFENDANT EPIC GAMES,**

4   **INC.'S MOTION TO DISMISS PLAINTIFF'S COMPLAINT AND SPECIAL**

5   **MOTION TO STRIKE (ANTI-SLAPP), OR IN THE ALTERNATIVE,**

6   **MOTION TO STRIKE CERTAIN FORMS OF RELIEF** with the Clerk of the

7   Court by using CM/ECF system, which will send a notice of electronic filing to all

8   persons registered for ECF. All copies of documents required to be served by Fed. R.

9   Civ. P. 5(a) and L.R. 5-3.1.1 have been so served.

10
                                          */s/ Dale M. Cendali*
11                                         Dale M. Cendali
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28