UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

Present: The Honorable   STEPHEN V. WILSON, U.S. DISTRICT JUDGE

| Paul M. Cruz | N/A |
|---|---|
| Deputy Clerk | Court Reporter / Recorder |
| Attorneys Present for Plaintiffs: | Attorneys Present for Defendants: |
| N/A | N/A |

Proceedings:   ORDER GRANTING MOTION TO DISMISS [38]

## I.   INTRODUCTION

Before the Court is a motion to dismiss filed by Defendant Epic Games against Plaintiff Hanagami.  Bringing suit under the Copyright Act and California's Unfair Competition Law, Plaintiff alleges that Defendant copied Plaintiff's Registered Choreography by creating an animated dance for Defendant's *Fortnite* game.

For the below reasons, Defendant's motion to dismiss is GRANTED.

## II.   BACKGROUND

Plaintiff Kyle Hanagami is a professional choreographer and dance instructor in Los Angeles, California.  Compl. ¶ 11, ECF No. 1.  On November 11, 2017, Plaintiff published a YouTube video of himself and others dancing to the song "How Long," by Charlie Puth.  *Id.* ¶ 16.  The approximately five-minute long video[1] includes five different groups of two or three dancers performing the same choreography.  *Id.*; *see* Declaration of Dale M. Cendali ("Cendali Decl."), Ex. A.[2]

Plaintiff's video is registered with the United States Copyright Office on February 20, 2021, at Copyright Registration Number PA 2-277-839, which "covers the 'How Long' Choreography," but excludes "music" from the registration (the "Registered Choreography").  *Id.* ¶ 1, *see* Ex. A.

---

[1] As of July 27, 2022, the video is available at the following URL: https://www.youtube.com/watch?v=iW2yUrXXRTI.
[2] In deciding the motion to dismiss, the Court may consider the pleadings, exhibits attached to the Complaint, and other materials integral to the Complaint.  *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322–23 (2007).

:_____

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

Defendant Epic Games, Inc., is a video game company that develops and distributes various video games. Compl. ¶¶ 18–19. One of its games is *Fortnite*, a free-to-play multiplayer shooting game where players can explore a virtual world, build and destroy structures, and compete to be the last player alive. *Id.* ¶¶ 4, 20–22.

Though *Fortnite* is free to play, it has an in-game marketplace (the "Item Shop") where players can purchase virtual currency to, in turn, purchase virtual customizations for their in-game characters. *Id.* ¶ 22. These customizations include new clothes, weapons, or, as relevant here, "emotes." *Id.* Emotes are animated movements or dances, which players can perform in *Fortnite*. *Id.*

The emote at the heart of this case is called "It's Complicated." *Id.* ¶ 38. Players can purchase the "It's Complicated" emote in the Item Shop to perform while playing *Fortnite*. *Id.* ¶ 39; *see* Cendali Decl., Ex. B. Plaintiff alleges that the "It's Complicated" emote contains "the most recognizable portion of Plaintiff's Registered Choreography, the portion for the hook at the beginning of the chorus of the song[.]" *Id.* ¶ 40.

The portion of the work at issue is set to four counts of music; the dancers repeat the movements twice in the song's chorus (the "Steps"). Having reviewed Plaintiff's video and Defendant's emote, the Court compared side-by-side still images of the dances, which are included at the end of this order in an appendix. *See* Appendix. Ten of the poses in the video and the emote are the same. *See id.*[3]

Plaintiff brings claims of direct and contributory copyright infringement and a claim for unfair competition. Compl. ¶¶ 53–88. Defendant moves to dismiss each of Plaintiff's claims.

### III. LEGAL STANDARD

A motion to dismiss under Rule 12(b)(6) challenges the legal sufficiency of the claims stated in the complaint. *See* Fed. R. Civ. P. 12(b)(6). To survive a motion to dismiss, the plaintiff's complaint "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to

---

[3] The parties reference the works by discussing the number of counts or beats each work contains, but arrive at different numbers. First is Plaintiff's Registered Choreography, which he refers to as a 96-count choreography, repeated five times. *See* Opp'n at 16. Defendant refers to the work as including 104 counts of music, repeated five times. *See* Mot. at 4. Second are Plaintiff's steps, which are set to four beats of music and performed twice (but non-consecutively) in the sixteen-beat chorus. Third is the "It's Complicated" emote, which includes sixteen beats of music. Plaintiff's Steps are performed over the first four beats of Defendant's sixteen-beat emote.

|  |  | : |  |
|---|---|---|---|
|  | Initials of Preparer | | |
|  | PMC | | |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A complaint that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action will not do." *Id.*; *see also Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (citing *Iqbal*, 556 U.S. at 678).

In reviewing a Rule 12(b)(6) motion, a court "must accept as true all factual allegations in the complaint and draw all reasonable inferences in favor of the nonmoving party." *Retail Prop. Trust v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 945 (9th Cir. 2014). Thus, "[w]hile legal conclusions can provide the complaint's framework, they must be supported by factual allegations. When there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement to relief." *Iqbal*, 556 U.S. at 679

**IV.    DISCUSSION**

    **A.   COPYRIGHT INFRINGEMENT**

A plaintiff bringing a claim for copyright infringement must sufficiently allege: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *Feist Pubs., Inc. v. Rural Tel. Serv. Co.*, 499 U.S. 340, 361 (1991). The "second element has two distinct components: 'copying' and 'unlawful appropriation.'" *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). Here, Plaintiff alleges ownership of the Registered Choreography and copying. *See* Compl. ¶ 1. The question before this Court is whether the Plaintiff has sufficiently stated a claim of "unlawful appropriation." *Rentmeester*, 883 F.3d at 1117.

To evaluate "unlawful appropriation," courts look to whether the works are "substantially similar." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1118 (9th Cir. 2018). The test for substantial similarity in the Ninth Circuit contains both an "extrinsic" and an "intrinsic" component. The extrinsic component compares "specific criteria which can be listed and analyzed" to determine whether the works are substantially similar. *Funky Films, Inc. v. Time Warner Entm't Co.*, L.P., 462 F.3d 1072, 1077 (9th Cir. 2006). The intrinsic component examines an ordinary person's subjective impressions of the similarities between the two works. *Id.*

"Only the extrinsic test's application may be decided by the court as a matter of law." *Rentmeester*, 883 F.3d at 1118 (citations omitted). Before comparing the works under the extrinsic test, the Court "must 'filter out' the unprotectable elements of the plaintiff's work—primarily ideas and concepts, material in the public domain, and *scènes à faire* (stock or standard features that are commonly associated with the treatment of a given subject)." *Id.* (citations omitted). "The protectable elements

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

that remain are then compared to corresponding elements of the defendant's work to assess similarities in the objective details of the works." *Id.* (citations omitted).

### 1. Filtering

Defendant argues that Plaintiff's Steps are unprotectable and must therefore be "filtered out" in assessing the similarity between the two works. The Court begins with *Rentmeester*, which both parties rely on. The plaintiff alleged that the defendant, Nike, copied a photograph of Michael Jordan leaping toward basketball hoop with a basketball above his head in a "*grand jeté*" pose. *Rentmeester*, 883 F.3d at 1115. Alone, this pose was unprotectable. *Id.* at 1119.

However, the Ninth Circuit grappled with the difficulty of "filtering out" a work's protected and unprotected elements. *See Rentmeester*, 883 F.3d at 1117–23. The court explained, "[c]ertain types of works can be dissected into protected and unprotected elements more readily than others." *Id.* at 1118. For example, with "novels, plays, and motion pictures," many "protectable elements of expression" like "plot, themes, dialogue, mood, setting, pace, characters, and sequence of events" can be objectively compared. *Id.* at 1118–19.

In terms of "filtering," however, the court explained that, though "photos can be broken down into objective elements that reflect the various creative choices the photographer made in composing the image—choices related to subject matter, pose, lighting, camera angle, depth of field, and the like[,] [citation], none of those elements is subject to copyright protection when viewed in isolation." *Id.* at 1119.

The Ninth Circuit explained:

> For example, a photographer who produces a photo using a highly original lighting technique or a novel camera angle cannot prevent other photographers from using those same techniques to produce new images of their own, provided the new images are not substantially similar to the earlier, copyrighted photo. With respect to a photograph's subject matter, no photographer can claim a monopoly on the right to photograph a particular subject just because he was the first to capture it on film. A subsequent photographer is free to take her own photo of the same subject, again so long as the resulting image is not substantially similar to the earlier photograph.

*Id.* Though one of the photo's "highly original elements" was Jordan's pose, the pose alone was not copyrightable. Rather, the photographer was "entitled to protection only for the way the pose is expressed in his photograph, a product of not just the pose but also the camera angle, timing, and shutter

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

speed [the photographer] chose." *Id.* Nevertheless, the court did not "filter out" the pose or any of the elements that, when "viewed in isolation," would not be subject to protection. *See id.*

Choreography is similar. Defined as "the composition and arrangement of a related series of dance movements and patterns organized into a coherent whole," choreographic works are composed of a number of individual poses that, when "viewed in isolation," would not be protectable.

Here, Defendant contends that not only are the individual poses unprotectable, but the Steps as a whole—the two-second combination of eight bodily movements, set to four beats of music—are unprotectable. Defendant argues that the Steps are similar to the pose in *Rentmeester*, an idea or "building blocks for a choreographer's expression."[4]

In large part, Defendant relies on guidance from the U.S. Copyright Office, which recognizes the continuum between copyrightable choreography and uncopyrightable dance. *See* U.S. Copyright Office, Compendium of U.S. Copyright Office Practices § 805.1 (3d ed. 2017) ("Compendium (Third)"); *see also Horgan v. Macmillan, Inc.*, 789 F.2d 157, 161 (2d Cir. 1986) ("Social dance steps and simple routines are not copyrightable.... Thus, for example, the basic waltz step, the hustle step, and the second position of classical ballet are not copyrightable.").[1] Courts defer to the Copyright Office's views expressed in such materials "only to the extent that those interpretations have the 'power to persuade.'" *Inhale, Inc. v. Starbuzz Tobacco, Inc.*, 755 F.3d 1038, 1042 (9th Cir. 2014), *as amended* (July 9, 2014).

Guidance from the Copyright Office suggests that the Steps are unprotectable. For example, the Copyright Office rejected a claim to steps called the "Floss," but when those steps were incorporated into a longer work, the Copyright Office registered the work. *See* Cendali Decl., Ex. D, Ex. E. The Copyright Office rejected a claim to the "Carlton" because it was merely a "simple routine," *see id.*, Ex. F at 6, and a claim to a dance called the "Five-Petal Flower" routine, *id.*, Ex. H. And the Copyright Office explained in its Compendium, that even if the "Made in the USA" dance might be registered as a whole

---

[4] Conceptually, this is similar to *Newton v. Diamond*, where the district court considered whether three notes sampled from a song were protectable, and decided they were not. *See Newton v. Diamond*, 204 F. Supp. 2d 1244, 1254 (C.D. Cal. 2002). On appeal, the Ninth Circuit "assum[ed] that the sampled segment of the composition was sufficiently original to merit copyright protection, [but] nevertheless affirm[ed] on the ground that [the defendants'] use was *de minimis* and therefore not actionable." *Newton v. Diamond*, 388 F.3d 1189, 1192 (9th Cir. 2004). Plaintiff reads this line to suggest that the Ninth Circuit disagreed with the district court's decision; however, the Ninth Circuit did not reach the question. The parties do not cite any other authorities that would enable the Court to compare music sampling and Defendant's "sampling" of Plaintiff's choreography. Facially, Defendant's conduct here could be analogized to a defendant copying a brief phrase from an underlying musical composition and incorporating that into its own work. However, because the issue is not before the Court, the Court thinks it inappropriate to resolve at this stage.

:

Initials of Preparer     PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

when "[d]uring the chorus, the dancers form the letters 'U, S, A' with their arms…the Office would reject a claim limited to the 'U, S, A' gesture." Compendium (Third) § 805.5(A).

To a degree, Plaintiff's Steps here involve more creativity than "the basic waltz step, the hustle step, and the second position of classical ballet." *Horgan*, 789 F.2d at 161. But Plaintiff's Steps resemble the Floss, the Carlton, or other examples in the Copyright Compendium:

> José Eduardo da Silva created the choreography for a complex dance production titled, Tango de Janeiro. One of the dances in the production incorporates an extensive number of steps and routines from a social dance. While the overall production could be registered as a choreographic work, the U.S. Copyright Office would reject a claim limited to the adapted social dance.

> Butler Beauchamp is a wide receiver for a college football team. Whenever he scores a touchdown, Butler performs a celebratory dance in the endzone. The dance merely consists of a few movements of the legs, shoulders, and arms. The Office would refuse to register this dance as a choreographic work.

*See* Compendium (Third), §§ 805.4(D), 805.5(A).

Moreover, the Copyright Act's legislative history specifically states that "choreographic works do not include social dance steps and simple routines." H.R. Rep. No. 94-1476, at 54 (1976), reprinted in 1976 U.S.C.C.A.N. at 5667; S. Rep. No. 94-473, at 52 (1975); *see Brantley v. Epic Games, Inc.*, 463 F. Supp. 3d 616, 623 (D. Md. 2020) (discussing, but not deciding, whether the Running Man dance could be subject to copyright protection). And the Compendium recognizes that "social dances, simple routines, and other uncopyrightable movements cannot be registered as separate and distinct works of authorship, *even if they contain a substantial amount of creative expression*." *See* Compendium (Third), § 805.4(D) (emphasis added).

Plaintiff does nothing to distinguish this guidance, simply arguing it is not persuasive without explaining why. Rather, Plaintiff references his originality and creativity in composing the Steps, something to which the Court is sympathetic. *See Rentmeester*, 883 F.3d at 1115; *compare Folkens*, 882 F.3d at 774 ("[A] depiction of two dolphins crossing under sea, one in a vertical posture and the other in a horizontal posture, is an idea first expressed in nature and as such is within the common heritage of humankind."). But whichever way the Court evaluates Plaintiff's Steps—two seconds, four beats of music, or eight body positions, repeated ten times throughout the Registered Choreography—Defendant has the better of the argument. There is no authority to suggest that Plaintiff's Steps are protectable when

:_____

Initials of Preparer   PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

viewed out of the context of the whole of Plaintiff's work; indeed, the weight of authority suggests otherwise.

On the continuum of choreography, the Steps are closer to a short routine like the "Floss" dance or to the "U, S, A" movements, neither of which would not be protectable. Numerically, the Steps make up as small component of Plaintiff's work, suggesting that the Copyright Office would not register the two-second Steps as a discrete work.[5] "The fact that a dance or movement may contain more than a trivial amount of original authorship is irrelevant to th[e] determination." Compendium (Third), § 805.5(B).

Accordingly, the Court concludes that, like in *Rentmeester*, Plaintiff is "entitled to protection only for the way the [Steps] [are] expressed in his [Registered Choreography]," a product of the various creative choices Plaintiff made in composing the Registered Choreography—i.e., in the entire five-minute work. *See Rentmeester*, 883 F.3d at 1119; *see also Feist*, 499 U.S. at 347–48 (finding that an author's selection and arrangement of factual material are entitled to protection if sufficiently original, even though the author cannot claim copyright protection for the underlying factual material).

### 2. Substantial Similarity

With the above discussion in mind, the Court evaluates the "similarities in the objective details of the works." *Rentermeester*, 883 F.3d at 1118. (citations omitted). In conducting an extrinsic analysis, the Ninth Circuit requires the works to be "considered as a whole." *Apple Comput., Inc. v. Microsoft Corp.*, 35 F.3d 1435, 1443 (9th Cir. 1994).[6]

Choreographic works are based on a myriad of creative elements, including rhythmic movement in a defined space, compositional arrangement, musical or textual accompaniment,[7] dramatic content, presentation before an audience, and execution by skilled performance. *See* Compendium (Third),

---

[5] By Plaintiff's count, there are 480 counts of choreography in Plaintiff's total work (96 counts of choreography, repeated five times). The Steps are performed for a total of 40 counts (eight counts in each chorus). This amounts to 8% of Plaintiff's work. The Court references this figure not to suggest that Defendant's copying was *de minimis*, but because it illustrates that Plaintiff's Steps are only a small component of Plaintiff's work. This too weighs against a finding that the Steps are protectable in isolation.

[6] Though Defendant argues that the Steps make up only a small portion of the entirety of the *Fortnite* ecosystem, this invites an incorrect analysis: in *Newton*, the Ninth Circuit recognized that the substantiality of the copying "is measured by considering the qualitative and quantitative significance of the copied portion in relation to the *plaintiff's* work as a whole." *Newton*, 388 F.3d at 1192 (emphasis added).

[7] Here, Plaintiff's copyright registration excludes music. *See* Compl., Ex. A.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

§ 805.2(A)–(F). Here, the two works are not substantially similar, because other than the four identical counts of poses—which are unprotected alone—Plaintiff and Defendant's works do not share any creative elements. *See Pasillas v. McDonald's Corp.*, 927 F.2d 440, 443 (9th Cir. 1991) (no infringement where unprotectable elements copied). The two works contain a series of different poses performed in different settings and by different types of performers: Plaintiff's dance is performed by humans in the physical world, and Defendant's Emote by animated characters in a virtual world. The works are performed for different audiences, as Plaintiff's video was performed at Plaintiff's dance studio and published for a YouTube audience. Defendant's Emote is performed by *Fortnite* players in-game for an in-game audience. Beyond the Steps, Plaintiff identifies no other similar creative elements in Plaintiff and Defendant's choreographic works.

Therefore, dismissal of Plaintiff's copyright claims is appropriate.

### B. UNFAIR COMPETITION LAW

Next, Defendant moves to dismiss Plaintiff's Unfair Competition Claim, which Defendant asserts is preempted by the Copyright Act.[8] The Ninth Circuit applies a two-part test to evaluate preemption in this context. *See Laws v. Sony Music Ent. Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006).

There is no dispute that the first element of the test, whether the "subject matter" of the state law claim falls within the "subject matter" of copyright, is satisfied. Thus, the Court turns to the second element—whether the rights asserted under state law are equivalent to the "exclusive rights" of copyright holders. *Id.* at 1137–38; *see also Maloney v. T3Media, Inc.*, 853 F.3d 1004, 1019 (9th Cir. 2017).

#### 1. Equivalent Rights Requirement

Section 106 affords copyright owners the "exclusive rights" to display, perform, reproduce, or distribute copies of a copyrighted work, to authorize others to do those things, and to prepare derivative works based upon the copyrighted work. *Maloney*, 853 F.3d at 1019 (citing 17 U.S.C. § 106). "To survive preemption, the state cause of action must protect the rights which are qualitatively different from the copyright rights. The state claim must have an extra element which changes the nature of the action." *Id.* (citation omitted).

---

[8] Defendant also makes a motion to strike based on anti-SLAPP grounds. Because Plaintiff's unfair competition claim is preempted, the Court need not address this motion.

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

Plaintiff argues that Defendant's use of the Registered Choreography created a "false impression" that Plaintiff endorsed *Fortnite*. Opp'n at 22–23 (citing Compl. at ¶¶ 48–49, 83–84). However, the cited portions of the complaint make clear that Plaintiff's claim is based on the copying of Plaintiff's registered choreography.[9] Without more, this is insufficient to avoid preemption. *See Brantley*, 463 F. Supp. 3d at 623; *see also Pellegrino v. Epic Games, Inc.*, 451 F. Supp. 3d 373, 390 n. 9 (E.D. Pa. 2020)

*Laws*, which held that the Copyright Act preempted the plaintiff's right to publicity claim, is illustrative. *Laws v. Sony Music Ent. Inc.*, 448 F.3d 1134, 1137 (9th Cir. 2006). There, the plaintiff brought a right of publicity claim claim against a defendant who reproduced a sample of the plaintiff's voice in a song. *Id.* at 1136. The court held that even though the right to publicity claim included an additional element—"commercial use"—plaintiff's claim was still, in essence, a copyright claim. *Id.*; *see also Del Madera Props. v. Rhodes & Gardner,* 820 F.2d 973, 977 (9th Cir.1987), *overruled on other grounds, Fogerty v. Fantasy, Inc.,* 510 U.S. 517 (1994) (finding unfair competition claim preempted where plaintiff alleged unlawful misappropriation that was "part and parcel of the copyright claim").

Here, too, Plaintiff's argument that Epic's use of the choreography involves the additional element of "false endorsement" does not transform the nature of the action. *See* Compl. ¶ 84 ("By misappropriating Hanagami's dance and through the improper copying and use of the Registered Choreography, Defendants have engaged in business acts or practices that constitute unfair competition[.]"). To the contrary, the unfair competition claim is based exclusively on the misappropriation of the original work, which is "part and parcel of the copyright claim." *See Del Madera*, 920 F.2d at 977.

Therefore, Plaintiff's Unfair Competition claim is preempted by the Copyright Act.

**V.     CONCLUSION**

For the foregoing reasons, Defendant's motion to dismiss is GRANTED.

**IT IS SO ORDERED.**

---

[9] Paragraphs 48 and 49 assert in a conclusory manner that Defendant created a "false impression that Hanagami endorsed Fortnite." Without additional facts, these conclusions are insufficient to state a claim or "transform the nature of the action." *Laws*, 448 F.3d at 1144.

|  | : |
|---|---|
| Initials of Preparer | PMC |

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES - GENERAL

| | | | |
|---|---|---|---|
| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
| Title | Kyle Hanagami v. Epic Games Inc. | | |

## APPENDIX

| Plaintiff's Choreography | Defendant's Emote |
|---|---|

1.

 

2.

 

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

3.

 

4.

 

Initials of Preparer  PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

5.

 

6.

 

Initials of Preparer

PMC

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

7.

 

8.

 

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

9.

 

10.

 

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | 2:22-cv-02063-SVW-MRW | Date | August 24, 2022 |
|---|---|---|---|
| Title | *Kyle Hanagami v. Epic Games Inc.* | | |

11.

 

Initials of Preparer

PMC